IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD HENRY WEINER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-949-BN |
| | § | |
| BLUE CROSS AND BLUE SHIELD | § | |
| OF LOUISIANA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard H. Weiner, DPM PA ("Dr. Weiner") filed a motion for summary judgment, *see* Dkt. No. 12, Defendant Blue Cross and Blue Shield of Louisiana ("BCBSLA") filed a response, *see* Dkt. Nos. 38 & 39, and Dr. Weiner filed a reply, *see* Dkt. No. 46.

For the reasons explained below, the Court denies Dr. Weiner's Motion for Summary Judgment [Dkt. No. 12].

## Background

Dr. Weiner is a healthcare provider who participates in the Blue Cross and Blue Shield of Texas ("BCBSTX") provider network, treating patients who are participants and beneficiaries under health benefit plans administered by BCBSTX. Defendant Blue Cross and Blue Shield of Louisiana's ("BCBSLA") insureds have access to BCBSTX's provider network for services.

Dr. Weiner treated a patient who was insured by BCBSLA under an Employee Health Benefit Plan (the "Plan") established and maintained for the patient's

employer. At the time of treatment, Dr. Weiner obtained an assignment of benefits from the patient, allowing Dr. Weiner to bill BCBSLA directly for payment of services. Dr. Weiner also contacted BCBSLA to verify coverage for the proposed treatment. Dr. Weiner then treated the patient and submitted a claim to BCBSLA.

BCBSLA initially denied the claim, indicating that the Plan excluded the treatment. Dr. Weiner appealed, and BCBSLA paid the claim. BCBSLA later determined that the claim had been paid in error and sought a refund from Dr. Weiner. Dr. Weiner appealed the refund request. BCBSLA denied the appeal, and Dr. Weiner asked BCBSLA to review the claim. In the meantime, BCBSLA recouped the money from a subsequent payment to Dr. Weiner for treatment of a different patient.

Representing himself *pro se*, Dr. Weiner filed suit in the small claims court of Dallas County, Texas against BCBSLA for "theft of money involving recoupment for medical services." Dkt. No. 1-2 at 6.

BCBSLA removed the case to this Court on the basis of federal question jurisdiction. *See* Dkt. No. 1.

Dr. Weiner then filed an unverified amended complaint alleging that BCBSLA's recoupment violated ERISA. *See* Dkt. No. 8. The Court, on its own motion and after considering submissions from the parties, determined that the Court has subject matter jurisdiction because Dr. Weiner's claim to recover payments allegedly owed to him under the Plan is dependent on his status as an assignee of a Plan enrollee's benefits and relates to an ERISA plan and so is preempted. *See* Dkt. No. 33.

Dr. Weiner filed a motion for summary judgment. *See* Dkt. No. 12. He contends that he is entitled to bring this ERISA suit because he is a beneficiary under assignments from his patients. He argues that he is entitled to the protections of ERISA procedures concerning notice and appeal of an adverse benefits determination and that BCBSLA failed to follow those procedures when it recouped money from him. *See* Dkt. No. 12.

In its response, BCBSLA asserts that Dr. Weiner does not have a right to sue BCBSLA for improper recoupment and that it properly denied the claims for which is recouped funds from Dr. Weiner. *See* Dkt. No. 39.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the

nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*,

140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no

genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Analysis

I.     <u>The Court sustains BCBSLA's objections to Dr. Weiner's factual statements.</u>

Dr. Weiner's motion for summary judgment consists of ten "facts" in support of the motion. BCBSLA objects to all of them because Dr. Weiner did not submit evidence to support those facts. *See* FED. R. CIV. P. 56(c)(2).

Although the Court is not required to peruse the record for summary judgment evidence, the Court notes that Dr. Weiner attached evidentiary documentation to his amended complaint. The verified complaint of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings comport with the requirements of Rule 56(e). *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.). But here the amended complaint is not verified, and the documents attached to the amended complaint are not submitted in admissible form. As a result, the Court cannot consider Dr. Weiner's statements in – or the documents attached to – the motion for summary judgment as summary judgment evidence.

But BCBSLA submits excerpts in admissible form from the administrative record, and the Court will consider that evidence. *See* Dkt. No. 40*; cf. Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011); *Vega v. Nat'l Life Ins. Servs., Inc.,* 188 F.3d 287, 299-300 (5th Cir. 1999) (en banc), *abrogated in part on other grounds by Metropolitan Life Ins. Co. v. Glenn*, 544 U.S. 105 (2008) (limiting scope of discovery in ERISA actions to the administrative record, the employee benefit plan, and questions concerning (i) the completeness of the administrative record, (ii) whether the administrator complied with ERISA's procedural regulations, and (iii) the existence and extent of the conflict of interest created by the administrator's dual role in making benefit determinations and paying claims).

BCBSLA also objects to the alleged "facts in support" of the motion for summary judgment – specifically facts 2, 5, 6, 7, 8 and 9 – and argues that they contain disputed factual contentions, conclusory allegations, and improper legal argument.

Fact 2 states:

Plaintiff has a signed assignment of benefits which Defendant has recognized and paid Plaintiff accordingly.

Dkt. No. 12 at 1. BCBSLA objects to the characterization of its actions and argues that any assignment of benefits was irrelevant to BCBSLA's coverage determination or decision to pay Dr. Weiner's claims. *See* Dkt. No. 39 at 8-9. The Court will address the relevance of and weight, if any, to be given to Dr. Weiner's factual assertion in the course of the analysis below.

Fact 5 states:

Plaintiff immediately issued a written letter on appeal objecting to any refund for services agreed was owed. In the written letters of appeal, Plaintiff notified Defendant that any attempt for a recoupment of money for medical services taken on other unrelated patients would be considered a theft of money and would violate and be contrary to established Supreme Court decisions. ERISA does not preempt RECOUPMENTS. There was no fraud or provider error involved. Open appeals of determination made by Plaintiff and received by Defendant were ignored. Services were provided on the original patient for whom the refund was requested and the unrelated patient for whom the recouped money was taken.

Dkt. No. 12 at 2. BCBSLA objects to these statements as not supported by admissible evidence, disputed facts, improper legal conclusions, and statements of opinion. *See* Dkt. No. 39 at 9. The Court will address the relevance of and weight, if any, to be given to Dr. Weiner's factual assertion in the course of the analysis below but will not treat the legal conclusions contained in the statement as summary judgment evidence of disputed facts.

Fact 6 states:

Plaintiff had an open appeal in place. Defendant had an obligation to reply in writing to the appeal but failed to respond. As an open appeal, no recoupment was to be performed.

Dkt. No. 12 at 2. BCBSLA denies the allegation that it did not respond to his appeal and objects to Dr. Weiner's failure to provide admissible evidence to support this allegation and legal conclusion as improper summary judgment evidence. *See* Dkt. No. 39 at 9 (citing to Dkt. No. 40 at 209-11 (App._204–APP_206)). The Court notes that there is a disputed fact question concerning whether BCBSLA responded to Dr. Weiner's appeal and sustains the objections as to the lack of admissible summary

judgment evidence to support this allegation and will not treat the legal conclusions contained in the statements as summary judgment evidence of disputed facts.

Fact 7 states:

> Nonetheless, Defendant issued instructions as an independent licensee through Blue Cross and Blue Shield Association, to Blue Cross and Blue Shield of Texas, to perform a recoupment from another unrelated patient. This was done after the Defendant had received two written notices that such action would be in violation of SCOUTIS decisions on Recoupment.

Dkt. No. 12 at 2. BCBSLA objects to Dr. Weiner's characterization of the legal effect of his appeal letters and contends that it acted properly in its recoupment effort. BCBSLA also notes that Dr. Weiner offered no evidence to support his allegation and cited inapplicable and overruled case precedent. *See* Dkt. No. 39 at 9-10. The Court sustains the objection as to the characterization of the legal effect of the appeal letters and Dr. Weiner's failure to submit admissible summary judgment evidence to support the allegation and will not treat the legal conclusions contained in the statements as summary judgment evidence of disputed facts.

Fact 8 states:

> Plaintiff attempted by multiple phone calls and written letters to prevent such wrongful recoupments by Defendant unsuccessfully.

Dkt. No. 12 at 2. BCBSLA objects that this is a legal conclusion and not a statement of fact. *See* Dkt. No. 39 at 10. The Court sustains the objection insofar as the Court will not treat the legal conclusions contained in the statement as summary judgment evidence of disputed facts.

Fact 9 states:

In Plaintiff's letter of 11-30-2016, BCBS was notified not to take any recoupments as this was under open appeal and that any such recoupments for services that they approved and paid in their earlier review was in violation of ERISA and referred that to review SCOTUS (Supreme Court of The United States) decisions to support this position (Englehoff, 3-21-2001; Great West Life & Annuity v. Knudson); Blue Cross and Blue Shield Association Case 1:09-cv-05619 Pennsylvania Chiropractic Assoc 2009-2013. Plaintiffs" (attorney D. Brian Hufford of Pomerantz Grossman Hufford Dahlstrom & Gross LLP praised the ruling in a statement to LAW360: "The decision found for us on the merits of our claim that an insurer must comply with ERISA when seeking to recover from providers previously paid health care benefits," he said. This is the first time the federal government has effectively clarified and interpreted federal law ERISA as the primary governing law for all overpayment conflicts due to plan coverage disputes. The significance and timeliness of the DOLs action in federal appeals court cannot be overstated, as it comes less than two months after a federal court in Chicago reached the same conclusion for plaintiff providers in another provider ERISA overpayment class-action against numerous Blue Cross Blue Shield entities. In an important victory for health care providers, a federal district court in Illinois recently held that health plans may not simply unilaterally recover overpaid funds from health care providers, but rather must provide the appeal and other procedural protections required under the federal Employee Retirement Income Security Act (ERISA) and its implementing regulations. While it has long been the rule that ERISA's appeal and other procedural rights must be allow when ERISA plans issue "adverse benefit determination" on claims submitted for reimbursement, it has not always been clear that these same procedures as required with respect to recoupment decisions. In *Pennsylvania Chiropractic Association v. Blue Cross Blue Shield Association*, No. 09 C 5619, 2014 WL 1276585 (N.D. Ill. Mar. 28, 2014), the Court held that Blue Cross Blue Shield (BCBS), an administrator and insurer of ERISA plans, could not recover overpayments it had made to certain chiropractors without first issuing new benefits determinations demonstrating the overpayments and complying with ERISA claims and appeals regulations." The Court held that BCBS's practices came 'nowhere near to substantial compliance with ERISA's notice and appeal requirements.' "While most would agree that providers should be required to return benefit payments where the overpayment resulted from a provider's undisputed error (for example, when the provider acknowledges having accidently submitted—and been paid on—the same

claim twice), or where the provider was allowed to meaningfully challenge the overpayment determination. The problem is that insurers do not limit their recoupments to these situations – instead, they regularly recoup alleged overpayments when there is no allegation of provider fraud, no allegation provider error, and no way for a provider or her patients to challenge the insurer's determination."

Plaintiff has submitted to Defendant signed authorization to release medical information and treat as well as a signed assignment of benefits. Additionally, BCBS of Louisiana has made payments to Plaintiff acknowledging the relationship of the parties and standing. SCOTUS decisions regarding this are established and Defendant was forewarned not to take recoupments from other patients.

Defendant has an obligation under its contract through the Association of Blue Cross and Blue Shield Plans to respond to written appeals within 30 days. Such appeals stay any action which was confirmed with Paula Kler of Blue Cross and Blue Shield of Texas. No responses were ever received by Defendant and as of 4-7-2017 no response has been received from Defendant. Blue Cross and Blue Shield of Texas is still waiting for a response which is to be forwarded to Plaintiff.

Dkt. No. 12 at 2-4. BCBSLA objects to these statements as not supported by admissible evidence, disputed facts, and improper legal conclusions and legal arguments. *See* Dkt. No. 39 at 10. The Court notes that the same or similar language is included in Dr. Weiner's Amended Complaint. *See* Dkt. No. 8 at 4-5. And the Court agrees that Fact 9 consists of disputed facts and improper legal conclusions and legal arguments. The objections are sustained insofar as the Court will not treat the legal conclusions contained in the statement as summary judgment evidence of disputed facts.

II.     Dr. Weiner has not shown a right to sue BCBSLA for improper recoupment.

    A.     The right to sue is limited to ERISA plan participants and beneficiaries.

BCBSLA argues that Dr. Weiner does not have standing to litigate under ERISA. But the issue in this case is not whether Dr. Weiner has standing but whether

his claim comes within the zone of interests regulated by a specific statute. *See Lujan v. Defendants of Wildlife*, 504 U.S. 555, 574 (1992); *see also* Dkt. No. 30 (holding that the Court has subject matter jurisdiction). The Supreme Court stressed in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct 1377, 1386 (2014), the importance of keeping standing distinct from statutory coverage, so the Court will avoid the language of standing.

ERISA's civil enforcement provision empowers only plan participants and beneficiaries to bring suit to recover their benefits under a plan. *See* 29 U.S.C. § 1132(a)(1)(b). Because a health care provider has no independent right of standing to seek redress under ERISA, the provider must be capable of classification as a participant or beneficiary to invoke ERISA. *See Dallas Cnty. Hosp. Dist. v. Assoc.'s Health & Welfare Plan*, 293 F.3d 282, 285 (5th Cir. 2002).

B.      Dr. Weiner is not a "participant" under ERISA.

A "participant" is an employee or former employee who seeks a plan's benefits. *See* 29 U.S.C. § 1002(7). Dr. Weiner does not argue that he is a "participant" as that term is used under ERISA.

C.      Dr. Weiner is not a "beneficiary" under ERISA.

1.      The Plan's anti-assignment clause bars the purported assignment.

A beneficiary is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). "The fact that [a health care provider] may be entitled to payment

from [an insurance company] as a result of her clients' participation in an employee plan does not make her a beneficiary for the purpose of ERISA standing." *Brown v. BlueCross BlueShield of Tenn., Inc.*, 827 F.3d 543, 545-56 (6th Cir. 2016) (listing circuit court cases); *see also DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 874-75 (9th Cir. 2017). "'Beneficiary,' as it is used in ERISA, does not without more encompass health care providers." *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 257 (2nd Cir. 2015).

Dr. Weiner contends that he is authorized to sue under ERISA as a beneficiary based on the "Assignment of Benefits" forms signed by his patients. *See* Dkt. No. 40 at 151-153 (App_146-48). A health care provider may possess the right to sue under ERISA by virtue of a valid assignment. *See Dallas Cnty. Hosp. Dist.*, 293 F.3d at 285.

But, here, BCBSLA argues that Dr. Weiner's ERISA claims are barred because the Plan prohibits assignment of benefits to third-party providers. The Plan's anti-assignment clause provides that "[t]he Member's rights and Benefits payable under this Benefit Plan are personal to the Member and may not be assigned in whole or in part by the Member." Dkt. No. 40 at 107 (App._102). The Plan language reiterates this prohibition, noting that "[w]e will not recognize assignments or attempted assignments of Benefits." *Id.* The Plan further provides that "[w]e reserve the right to pay .... Providers in [BCBSLA] directly instead of paying the Member." *Id.*

The validity of an assignment depends on the construction of the ERISA plan at issue. *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*,

298 F.3d 348, 351-52 (5th Cir. 2002). ERISA plan provisions are interpreted according to their plain meaning, and any ambiguities will be resolved against the plan. *See id.*; *Dallas Cnty. Hosp. Dist.*, 293 F.3d at 288.

Applying universally recognized canons of contract interpretation to the plain wording of the of the anti-assignment clause in this case, the Court concludes that any purported assignment of benefits from the BCBSLA members to Dr. Weiner would be void. As a result, Dr. Weiner does not have a right to challenge BCBSLA's recoupment of payments under ERISA.

2. Recoupment claims are outside the scope of the purported assignments.

BCBSLA also contends that Dr. Weiner is not authorized to sue under ERISA because disputes concerning recoupment are outside the scope of the purported assignments. "A healthcare provider-assignee 'stands in the shoes of the beneficiary,' and can only assert claims that could have been brought by patients themselves." *Brown v. BlueCross BlueShield of Tenn.*, 827 F.3d 543, 548 (6th Cir. 2016) (quoting *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999)). According to BCBSLA, it could not recoup funds from its members; therefore, the members could not sue to recover recouped funds. And, because an assignment cannot convey more rights than the members possess, the members could not assign the right to bring suit to recover recouped funds to the healthcare provider, Dr. Weiner. *See id.* at 549.

Generally, a claim regarding recoupments is not a suit to recover benefits under the ERISA plan. Rather, the claim relates to the insurer's process of post-payment

claims review and practice of recouping erroneous payments. These are claims that the health care provider's patient-assignors could not assert as any recoupment would come from providers and not from the patients. *See DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.* 852 F.3d 868, 877 (9th Cir. 2017). The claims therefore do not fall within the scope of the assignments. *See id.* ("Although a 'dispute ... over the *right* to payment, ... might be said to depend on the patients' assignments to the Providers,' the dispute over recoupment 'depends on the terms of the provider agreements,' not on the assignment." (quoting *Anesthesia Care Assocs.*, 187 F.3d at 1051)); *Brown*, 827 F.3d at 548-49 (holding that a health care provider's claims regarding recoupment were "outside the scope of [the provider's] assigned standing," because "the patient-assignors are not party to the Provider Agreement that governs the recoupment process, and [the insurer] has no right to recoup payments for medical care made to its members").

Dr. Weiner provides services under a direct contract with BCBSTX (the "provider agreement"), and BCBSLA's insured's have access to BCBSTX's provider network for services. *See* Dkt. No. 46 at 1. The provider agreement is not included in the summary judgment evidence, and the portions of the Plan that are included in the summary judgment evidence contain no provisions authorizing plan members to sue to recover recouped funds. *See* Dkt. No. 40.

Dr. Weiner alleges that BCBSLA violated ERISA's appeal procedures concerning the recoupment of funds that BCBSLA claimed were wrongfully paid for treatment of

one patient from those due for treatment of a different patient. *See* Dkt. No. 8. These are claims that the patients were not authorized to assert.

Accordingly, under the summary judgment evidence, and even if the assignments from Dr. Weiner's patients were valid, they would not assign the right to sue for recovery of recouped funds because the patients did not possess that right.

III.   Dr. Weiner is not entitled to summary judgment on the merits.

    A.   Dr. Weiner's legal authorities do not support his claims.

Dr. Weiner contends in both his amended complaint and motion for summary judgment that three cases – *Great-West Life & Annuity Ins. Co. v. Knudsen*, 534 U.S. 204 (2002); *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001); and *Penn. Chiropractic Assoc. v. Blue Cross Blue Shield Assoc.*, 2014 WL 1276585 (N.D. Ill. Mar. 28, 2014), *rev'd by Pa. Chiropractic Ass'n v. Independence Hosp. Indem. Plan, Inc.*, 802 F.3d 926 (7th Cir. 2015) – compel the legal conclusion that BCBSLA's recoupment violated ERISA's notice and appeal requirements. *See* Dkt. Nos. 8 & 12.

The first two cases are not analogous to this case. In *Great-West Life & Annuity Ins. Co.*, the Supreme Court held that an insurer may not sue under Section 502(a)(3) of ERISA to collect proceeds by subrogation from an insured's lawsuit against a tortfeasor, because such is not a suit in equity but in law. *See* 534 U.S. at 214. And, in *Egelhoff*, the Supreme Court held that ERISA preempts state law directing payment of life insurance benefits contrary to ERISA policy designations. *See* 532 U.S. at 152.

The third case is closer. In *Pennsylvania Chiropractic Association*, two chiropractors and an association of chiropractors sued an insurance company to recover unpaid benefits under their provider plans. The insurance company, according to the terms of its provider agreements, simply recovered allegedly overpaid funds from the providers. The providers argued that, when the insurance company recouped funds from them, it violated notice and appeal requirements allegedly owed to ERISA plan members under ERISA. *See* 2014 WL 1276585, at *7.

The district court held that the providers were beneficiaries for purposes of ERISA because the plan expressly designated them to receive payment directly, and the district court held that those payments constituted ERISA benefits. The district court also held that the insurance company's recoupment was considered an "adverse benefit determination" and that the insurance company was required to follow ERISA claims procedures. *See id.* at *11, *14-*16.

The Seventh Circuit Court of Appeals reversed. *See Independence Hosp. Indem.*, 802 F.3d at 930. The Court explained that the providers' ability to invoke ERISA depended on their being "beneficiaries" of a plan established under that law. *See id.* at 927, 928 (citing 29 U.S.C. § 1132(a)(a)(B)). The providers relied on their contracts with the insurance companies. They did not rely on a designation in an ERISA plan or a valid assignment from any patient. *See id.* at 928. Because "a network contract between a medical provider and an insurer does not make that provider a 'beneficiary' under ERISA," *id.* at 929 (citing *Rojas*, 793 F.3d at 257), the Court held that the

providers were not "beneficiaries" as ERISA uses that term, so they were not entitled to the procedures – including notice and appeal procedures following an adverse benefit determination – established by ERISA. *See id.* at 930.

Based on the Court's analysis above, this decision, too, does not support Dr. Weiner's assertion that he is entitled to summary judgment.

B.    The Plan administrator did not abuse its discretion in denying the claim.

BCBSLA finally argues that, assuming Dr. Weiner was authorized to bring a claim under ERISA, the claim was properly denied. BCBSLA asserts that Dr. Weiner has not pleaded and cannot plead that BCBSLA abused its discretion in denying Dr. Weiner's claims that resulted in the recoupment or that BCBSLA recouped money that BCBSLA was not owed by Dr. Weiner.

Where a benefits plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the reviewing court applies an abuse of discretion standard to the plan administrator's decision to deny benefits. *See Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512 (5th Cir. 2010) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *see also McCorkle v. Metropolitan Life Ins. Co.*, 757 F.3d 452, 456057 (5th Cir. 2014); *accord Ariana M. v. Humana Health Plan of Tex., Inc.*, ___ F.3d ___, No. 16-20174, 2018 WL 1096980, at *1, *4-*7 (5th Cir Mar. 1, 2018) (en banc) (explaining that, "[w]hen an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion" but holding that, for plans that do not have valid delegation

19

clauses, a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard regardless whether the denial of benefits is based on an interpretation of plan language or an administrator's factual determination that a beneficiary is not eligible). This is the functional equivalent of arbitrary and capricious review. *See Anderson*, 619 F.3d at 512. "A decision is arbitrary if it is 'made without a rational connection between the known facts and the decision.'" *Id.* (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)).

The BCBSLA Plan grants the administrator full discretion to determine eligibility for Plan benefits and to construe Plan benefits. *See* Dkt. No. 40 at 103-04 (App._98–App._99). Dr. Weiner coded the claim for which BCBSLA later sought recoupment as "L3000." Dkt. No. 6 at 32. This code represents a procedure for fitting a molded shoe insert. *See* https://coder.aapc.com/hcpcs-codes/L3000. This procedure is excluded from coverage under the terms of the Plan. *See* Dkt. No. 40 at 80 (App._75) ("No Benefits are available for supportive devices for the foot, except when used in the treatment of diabetic foot disease."); 224-25 (App._219–App_220). And Dr. Weiner was notified that the procedure was excluded when he sought preapproval for the procedure. *See* Dkt. No. 6 at 25.

Because the procedure was excluded under the Plan, and because the Court must "affirm the determination of the plan administrator unless it is arbitrary or is not supported by at least substantial evidence", *see McCorkle*, 757 F.3d at 457 (emphasis

omitted), the Court determines that BCBSLA did not abuse its discretion in denying the claim on which Dr. Weiner's lawsuit is based.

**CONCLUSION**

The Court DENIES Plaintiff Richard H. Weiner, DPM PA's Motion for Summary Judgment [Dkt. No. 12].

DATED: March 21, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE