IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD HENRY WEINER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-949-BN |
| | § | |
| BLUE CROSS AND BLUE SHIELD | § | |
| OF LOUISIANA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Blue Cross and Blue Shield of Louisiana ("BCBSLA") has filed a motion for summary judgment. *See* Dkt. No. 54. Plaintiff Richard H. Weiner, DPM PA ("Dr. Weiner") has filed a response, *see* Dkt. No. 55, BCBSLA filed a reply, *see* Dkt. No. 56, Dr. Weiner filed a sur-reply, *see* Dkt. No. 57, and BCBSLA filed a sur-reply*, see* Dkt. No. 57.

For the following reasons, the motion for summary judgment is GRANTED.

**Background**

Dr. Weiner is a healthcare provider who participates in the Blue Cross and Blue Shield of Texas ("BCBSTX") provider network, treating patients who are participants and beneficiaries under health benefit plans administered by BCBSTX. Defendant Blue Cross and Blue Shield of Louisiana's ("BCBSLA") insureds have access to BCBSTX's provider network for services.

Dr. Weiner treated a patient who was insured by BCBSLA under an Employee

-1-

Health Benefit Plan (the "Plan") established and maintained for the patient's employer. The Plan vests BCBSLA with full discretionary authority to determine eligibility for benefits and/or to construe the terms of the Plan.

At the time of treatment, Dr. Weiner obtained an assignment of benefits from the patient, allowing Dr. Weiner to bill BCBSLA directly for payment of services. The Plan contains an anti-assignment provision prohibiting assignment of benefits to a third-party provider. Specifically, the Plan states:

> The Member's rights and Benefits payable under this Benefit Plan are personal to the Member and may not be assigned in whole or in part by the Member.

Dkt. No. 40 at 107 (App._102).

Dr. Weiner treated the patient and submitted a claim to BCBSLA. BCBSLA initially denied the claim, indicating that the Plan excluded the treatment. Dr. Weiner appealed, and BCBSLA paid the claim. BCBSLA later determined that the claim had been paid in error and sought a refund from Dr. Weiner. Dr. Weiner appealed the refund request. BCBSLA denied the appeal, and Dr. Weiner asked BCBSLA to review the claim. In the meantime, BCBSLA recouped the money from a subsequent payment to Dr. Weiner for treatment of a different patient.

Representing himself *pro se*, Dr. Weiner filed suit in the small claims court of Dallas County, Texas against BCBSLA for "theft of money involving recoupment for medical services." Dkt. No. 1-2 at 6.

BCBSLA removed the case to this Court on the basis of federal question jurisdiction. *See* Dkt. No. 1.

Dr. Weiner then filed an unverified amended complaint alleging that BCBSLA's recoupment violated ERISA. *See* Dkt. No. 8. The Court, on its own motion and after considering submissions from the parties, determined that the Court has subject matter jurisdiction because Dr. Weiner's claim to recover payments allegedly owed to him under the Plan is dependent on his status as an assignee of a Plan enrollee's benefits and relates to an ERISA plan and so is preempted. *See* Dkt. No. 33.

BCBSLA moves for summary judgment on Dr. Weiner's claims. *See* Dkt. No. 54. BCBSLA contends that there are no issues of material fact concerning either Dr. Weiner's lack of authority to sue BCBSLA for improper recoupment or BCBSLA's discretion in denying Dr. Weiner's claim. BCBSLA argues that Dr. Weiner has no right to sue BCBSLA for the claims brought in this lawsuit because (1) the health benefit plan at issue specifically prohibits an assignment of benefits and (2) the patient does not possess the right to sue for recouped funds. BCBSLA also argues that it did not abuse its discretion under the Plan when it denied the Dr. Weiner's claim because the claims are excluded from coverage under the Plan and Dr. Weiner was so informed when he sought preapproval for the procedure.

## Summary Judgment Evidence

BCBSLA's motion for summary judgment is supported by the same evidence that it submitted in opposition to Dr. Weiner's motion for summary judgment. *See id.* at 6 (incorporating by reference Plaintiff's Appendix in Support of Defendant's Response to Plaintiff's Motion for Summary Judgment [Dkt. No. 40]).

Likewise, Dr. Weiner attaches the same evidence in the same non-admissible

form to his sur-reply that he attached to his motion for summary judgment. *See* Dkt. Nos. 12, 57. And BCBSLA raises the same objections to that evidence that it raised before.

For the reasons stated in the Court's Memorandum Opinion and Order denying Dr. Weiner's motion for summary judgment, the Court cannot consider the documents attached to Dr. Weiner's sur-reply as summary judgment evidence. *See* Dkt. No. 48 at 7.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence

favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and

internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in

favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

**Analysis**

I.  Dr. Weiner is not authorized to sue BCBSLA for improper recoupment.

    A.  The right to sue is limited to ERISA plan participants and beneficiaries.

Dr. Weiner has the burden to show that he has a right to bring this lawsuit. *See Clapper v. Anmesty Intern., USA*, 568 U.S. 398, 412 (2013) (citing *See Lujan v. Defendants of Wildlife*, 504 U.S. 555, 574 (1992)). ERISA's civil enforcement provision empowers only plan participants and beneficiaries to bring suit to recover their benefits under a plan. *See* 29 U.S.C. § 1132(a)(1)(b). Because a health care provider has no independent right of standing to seek redress under ERISA, the provider must be capable of classification as a participant or beneficiary to invoke ERISA. *See Dallas Cnty. Hosp. Dist. v. Assoc.'s Health & Welfare Plan*, 293 F.3d 282, 285 (5th Cir. 2002).

    B.  Dr. Weiner is not a "participant" under ERISA.

A "participant" is an employee or former employee who seeks a plan's benefits. *See* 29 U.S.C. § 1002(7). Dr. Weiner does not allege that he is a "participant" as that term is used under ERISA, and there is no evidence that Dr. Weiner is a participant.

    C.  Dr. Weiner is not a "beneficiary" under ERISA.

        1.  The Plan's anti-assignment clause bars the purported assignment.

A beneficiary is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."

29 U.S.C. § 1002(8). "The fact that [a health care provider] may be entitled to payment from [an insurance company] as a result of her clients' participation in an employee plan does not make her a beneficiary for the purpose of ERISA standing." *Brown v. BlueCross BlueShield of Tenn., Inc.*, 827 F.3d 543, 545-56 (6th Cir. 2016) (listing circuit court cases); *see also DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 874-75 (9th Cir. 2017). "'Beneficiary,' as it is used in ERISA, does not without more encompass health care providers." *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 257 (2nd Cir. 2015).

Dr. Weiner contends that he is authorized to sue under ERISA as a beneficiary based on the "Assignment of Benefits" forms signed by his patients. *See* Dkt. No. 40 at 151-153 (App_146-48). A health care provider may possess the right to sue under ERISA by virtue of a valid assignment. *See Dallas Cnty. Hosp. Dist.*, 293 F.3d at 285.

But, here, BCBSLA argues that Dr. Weiner's ERISA claims are barred because the Plan prohibits assignment of benefits to third-party providers. The Plan's anti-assignment clause provides that "[t]he Member's rights and Benefits payable under this Benefit Plan are personal to the Member and may not be assigned in whole or in part by the Member." Dkt. No. 40 at 107 (App._102). The Plan language reiterates this prohibition, noting that "[w]e will not recognize assignments or attempted assignments of Benefits." *Id.* The Plan further provides that "[w]e reserve the right to pay .... Providers in [BCBSLA] directly instead of paying the Member." *Id.*

The validity of an assignment depends on the construction of the ERISA plan

-9-

at issue. *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 351-52 (5th Cir. 2002). ERISA plan provisions are interpreted according to their plain meaning, and any ambiguities will be resolved against the plan. *See id.*; *Dallas Cnty. Hosp. Dist.*, 293 F.3d at 288.

Applying universally recognized canons of contract interpretation to the plain wording of the of the anti-assignment clause in this case, the Court concludes that any purported assignment of benefits from the BCBSLA members to Dr. Weiner would be void. As a result, Dr. Weiner does not have a right to challenge BCBSLA's recoupment of payments under ERISA.

    2.    <u>Recoupment claims are outside the scope of the purported assignments.</u>

BCBSLA also contends that Dr. Weiner is not authorized to sue under ERISA because disputes concerning recoupment are outside the scope of the purported assignments. "A healthcare provider-assignee 'stands in the shoes of the beneficiary,' and can only assert claims that could have been brought by patients themselves." *Brown v. BlueCross BlueShield of Tenn.*, 827 F.3d 543, 548 (6th Cir. 2016) (quoting *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999)). According to BCBSLA, it could not recoup funds from its members; therefore, the members could not sue to recover recouped funds. And, because an assignment cannot convey more rights than the members possess, the members could not assign the right to bring suit to recover recouped funds to the healthcare provider, Dr. Weiner. *See id.* at 549.

Generally, a claim regarding recoupments is not a suit to recover benefits under the ERISA plan. Rather, the claim relates to the insurer's process of post-payment claims review and practice of recouping erroneous payments. These are claims that the health care provider's patient-assignors could not assert as any recoupment would come from providers and not from the patients. *See DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.* 852 F.3d 868, 877 (9th Cir. 2017). The claims therefore do not fall within the scope of the assignments. *See id.* ("Although a 'dispute ... over the *right* to payment, ... might be said to depend on the patients' assignments to the Providers,' the dispute over recoupment 'depends on the terms of the provider agreements,' not on the assignment." (quoting *Anesthesia Care Assocs.*, 187 F.3d at 1051)); *Brown*, 827 F.3d at 548-49 (holding that a health care provider's claims regarding recoupment were "outside the scope of [the provider's] assigned standing," because "the patient-assignors are not party to the Provider Agreement that governs the recoupment process, and [the insurer] has no right to recoup payments for medical care made to its members").

Dr. Weiner provides services under a direct contract with BCBSTX (the "provider agreement"), and BCBSLA's insured's have access to BCBSTX's provider network for services. *See* Dkt. No. 46 at 1. The provider agreement is not included in the summary judgment evidence, and the portions of the Plan that are included in the summary judgment evidence contain no provisions authorizing plan members to sue to recover recouped funds. *See* Dkt. No. 40.

Dr. Weiner alleges that BCBSLA violated ERISA's appeal procedures concerning

the recoupment of funds that BCBSLA claimed were wrongfully paid for treatment of one patient from those due for treatment of a different patient. *See* Dkt. No. 8. These are claims that the patients were not authorized to assert.

Accordingly, under the summary judgment evidence, and even if the assignments from Dr. Weiner's patients were valid, they would not assign the right to sue for recovery of recouped funds because the patients did not possess that right.

II.  <u>The Plan administrator did not abuse its discretion in denying the claim.</u>

When a benefits plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the reviewing court applies an abuse of discretion standard to the plan administrator's decision to deny benefits. *See Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512 (5th Cir. 2010) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *see also McCorkle v. Metropolitan Life Ins. Co.*, 757 F.3d 452, 456057 (5th Cir. 2014); *accord Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247, 251-56 (5th Cir 2018) (en banc) (explaining that, "[w]hen an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion" but holding that, for plans that do not have valid delegation clauses, a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard regardless whether the denial of benefits is based on an interpretation of plan language or an administrator's factual determination that a beneficiary is not eligible). This is

the functional equivalent of arbitrary and capricious review. *See Anderson*, 619 F.3d at 512. "A decision is arbitrary if it is 'made without a rational connection between the known facts and the decision.'" *Id.* (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)).

Here, the BCBSLA Plan grants the administrator full discretion to determine eligibility for Plan benefits and to construe Plan benefits. *See* Dkt. No. 40 at 103-04 (App._98–App._99). Dr. Weiner coded the claim for which BCBSLA later sought recoupment as "L3000." Dkt. No. 6 at 32. This code represents a procedure for fitting a molded shoe insert. *See* https://coder.aapc.com/hcpcs-codes/L3000. This procedure is excluded from coverage under the terms of the Plan. *See* Dkt. No. 40 at 80 (App._75) ("No Benefits are available for supportive devices for the foot, except when used in the treatment of diabetic foot disease."); 224-25 (App._219–App_220). And Dr. Weiner was notified that the procedure was excluded when he sought preapproval for the procedure. *See* Dkt. No. 6 at 25.

Because the procedure was excluded under the Plan, and because the Court must "affirm the determination of the plan administrator unless it is arbitrary or is not supported by at least substantial evidence", *see McCorkle*, 757 F.3d at 457 (emphasis omitted), the Court determines that BCBSLA did not abuse its discretion in denying the claim on which Dr. Weiner's lawsuit is based.

III.    <u>BCBSLA did not violate ERISA's notice and appeal requirements.</u>

Dr. Weiner contends in both his amended complaint and his responses to

BCBSLA's motion for summary judgment that three cases – *Great-West Life & Annuity Ins. Co. v. Knudsen*, 534 U.S. 204 (2002); *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001); and *Penn. Chiropractic Assoc. v. Blue Cross Blue Shield Assoc.*, 2014 WL 1276585 (N.D. Ill. Mar. 28, 2014), *rev'd by Pa. Chiropractic Ass'n v. Independence Hosp. Indem. Plan, Inc.*, 802 F.3d 926 (7th Cir. 2015) – compel the legal conclusion that BCBSLA's recoupment violated ERISA's notice and appeal requirements. *See* Dkt. Nos. 8, 55, 57.

The first two cases are not analogous to this case. In *Great-West Life & Annuity Ins. Co.*, the Supreme Court held that an insurer may not sue under Section 502(a)(3) of ERISA to collect proceeds by subrogation from an insured's lawsuit against a tortfeasor, because such is not a suit in equity but in law. *See* 534 U.S. at 214. And, in *Egelhoff*, the Supreme Court held that ERISA preempts state law directing payment of life insurance benefits contrary to ERISA policy designations. *See* 532 U.S. at 152.

The third case is closer. In *Pennsylvania Chiropractic Association*, two chiropractors and an association of chiropractors sued an insurance company to recover unpaid benefits under their provider plans. The insurance company, according to the terms of its provider agreements, simply recovered allegedly overpaid funds from the providers. The providers argued that, when the insurance company recouped funds from them, it violated notice and appeal requirements allegedly owed to ERISA plan members under ERISA. *See* 2014 WL 1276585, at *7.

The district court held that the providers were beneficiaries for purposes of ERISA because the plan expressly designated them to receive payment directly, and

the district court held that those payments constituted ERISA benefits. The district court also held that the insurance company's recoupment was considered an "adverse benefit determination" and that the insurance company was required to follow ERISA claims procedures. *See id.* at *11, *14-*16.

The United States Court of Appeals for the Seventh Circuit reversed. *See Independence Hosp. Indem.*, 802 F.3d at 930. The Court of Appeals explained that the providers' ability to invoke ERISA depended on their being "beneficiaries" of a plan established under that law. *See id.* at 927, 928 (citing 29 U.S.C. § 1132(a)(a)(B)). The providers relied on their contracts with the insurance companies. They did not rely on a designation in an ERISA plan or a valid assignment from any patient. *See id.* at 928.

The legal authorities on which Dr. Weiner relies do not preclude summary judgment for BCBSLA in this case.

## Conclusion

Defendant's Motion for Summary Judgment [Dkt. No. 54] is GRANTED. The case will proceed on BCBSLA's counterclaims against Dr. Weiner. *See* Dkt. No. 23, 42.

The Court directs BCBSLA to file a status report regarding its counterclaims against Dr. Weiner by **August 31, 2018**.

SO ORDERED.

DATED: August 17, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE