IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD H. WEINER, DPM, PA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-949-BN |
| | § | |
| BLUE CROSS AND BLUE SHIELD | § | |
| OF LOUISIANA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Blue Cross and Blue Shield of Louisiana ("BCBSLA") has filed a Motion for Attorneys' Fees, *see* Dkt. No. 63 (the "Fees Motion"), seeks an award of attorneys' fees and costs as a prevailing party under section 502(g)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(g)(1).

The Court has dismissed with prejudice Plaintiff Richard H. Weiner, DPM, PA's ("Dr. Weiner") claims against BCBSLA be on the grounds set forth in the Court's August 17, 2018 Memorandum Opinion and Order [Dkt. No. 60] and, on BCBSLA's motion [Dkt. No. 62], dismissed BCBSLA's counterclaim against Dr. Weiner with prejudice. *See* Dkt. No. 68.

For the reasons and to the extent explained below, the Court GRANTS in part and DENIES in part Defendant Blue Cross and Blue Shield of Louisiana's Motion for Attorneys' Fees [Dkt. No. 63].

-1-

**Background**

As the Court explained in its August 17, 2018 Memorandum Opinion and Order:

> Dr. Weiner is a healthcare provider who participates in the Blue Cross and Blue Shield of Texas ("BCBSTX") provider network, treating patients who are participants and beneficiaries under health benefit plans administered by BCBSTX. Defendant Blue Cross and Blue Shield of Louisiana's ("BCBSLA") insureds have access to BCBSTX's provider network for services.
>
> Dr. Weiner treated a patient who was insured by BCBSLA under an Employee Health Benefit Plan (the "Plan") established and maintained for the patient's employer. The Plan vests BCBSLA with full discretionary authority to determine eligibility for benefits and/or to construe the terms of the Plan.
>
> At the time of treatment, Dr. Weiner obtained an assignment of benefits from the patient, allowing Dr. Weiner to bill BCBSLA directly for payment of services. The Plan contains an anti-assignment provision prohibiting assignment of benefits to a third-party provider. Specifically, the Plan states:
>
>> The Member's rights and Benefits payable under this Benefit Plan are personal to the Member and may not be assigned in whole or in part by the Member.
>
> Dkt. No. 40 at 107 (App._102).
>
> Dr. Weiner treated the patient and submitted a claim to BCBSLA. BCBSLA initially denied the claim, indicating that the Plan excluded the treatment. Dr. Weiner appealed, and BCBSLA paid the claim. BCBSLA later determined that the claim had been paid in error and sought a refund from Dr. Weiner. Dr. Weiner appealed the refund request. BCBSLA denied the appeal, and Dr. Weiner asked BCBSLA to review the claim. In the meantime, BCBSLA recouped the money from a subsequent payment to Dr. Weiner for treatment of a different patient.
>
> Representing himself *pro se*, Dr. Weiner filed suit in the small claims court of Dallas County, Texas against BCBSLA for "theft of money involving recoupment for medical services." Dkt. No. 1-2 at 6.
>
> BCBSLA removed the case to this Court on the basis of federal question jurisdiction. *See* Dkt. No. 1.
>
> Dr. Weiner then filed an unverified amended complaint alleging that BCBSLA's recoupment violated ERISA. *See* Dkt. No. 8. The Court, on its own motion and after considering submissions from the parties, determined that the Court has subject matter jurisdiction because Dr. Weiner's claim to recover payments allegedly owed to him under the Plan is dependent on his status as an assignee of a Plan enrollee's benefits and

relates to an ERISA plan and so is preempted. *See* Dkt. No. 33.

BCBSLA moves for summary judgment on Dr. Weiner's claims. *See* Dkt. No. 54. BCBSLA contends that there are no issues of material fact concerning either Dr. Weiner's lack of authority to sue BCBSLA for improper recoupment or BCBSLA's discretion in denying Dr. Weiner's claim. BCBSLA argues that Dr. Weiner has no right to sue BCBSLA for the claims brought in this lawsuit because (1) the health benefit plan at issue specifically prohibits an assignment of benefits and (2) the patient does not possess the right to sue for recouped funds. BCBSLA also argues that it did not abuse its discretion under the Plan when it denied the Dr. Weiner's claim because the claims are excluded from coverage under the Plan and Dr. Weiner was so informed when he sought preapproval for the procedure.

Dkt. No. 60 at 1-3.

The Court agreed and granted BCBSLA's Motion for Summary Judgment [Dkt. No. 54]. *See id.* at 8-15.

BCBSLA now asserts, in support of its Fees Motion, that

[t]he Court disposed of this matter on August 17, 2018 in a Memorandum Opinion and Order granting summary judgment in favor of BCBSLA, dismissing Plaintiff's claims with prejudice. The Court's Order was the culmination of a proceeding in which Plaintiff claimed that BCBSLA had violated ERISA by improperly recouping funds BCBSLA erroneously paid to Plaintiff for services not covered by the plan at issue.

In April 2017, BCBSLA sought an early settlement of this matter under Federal Rules of Civil Procedure 16 and 26. Plaintiff refused. The Parties also conducted a settlement conference with U.S. Magistrate Judge Stickney on June 2, 2017. Although Plaintiff's allegations lacked legal or factual basis, BCBSLA offered Plaintiff a monetary amount in settlement that was multiples of the amount of benefits Plaintiff placed at issue. Plaintiff refused. Whereupon, BCBSLA defended Plaintiff's claim and became a prevailing party, thus achieving the degree of success necessary to merit an award of fees. Furthermore, all factors the Court considers when awarding fees weigh in BCBSLA's favor.

BCBSLA now moves to recover its attorneys' fees and costs incurred subsequent to its initial case review and efforts to reach an early resolution.

Dkt. No. 63 at 2 (footnotes omitted).

In response, Dr. Weiner explains that, "upon receipt of the decision by U.S. Magistrate David Horan, issued a check to Defendant in the amount of overpayment it requested," which "was made to Defendant promptly and in good faith," and "object[s] to Defendant's request for Attorney fees which is inappropriate, excessive, and acts as a barrier to anyone acting pro se seeking recovery of money taken from unrelated patients after making proper BCBS appeals." Dkt. No. 65 at 4.

According to Dr. Weiner,

> [w]hile Defendant obtained a dismissal of Plaintiff's Motion for Summary Judgment, it should not be awarded attorney fees. This was not a frivolous suit without merit filed by Plaintiff. It was a simple suit for Theft of Services filed in Justice of the Peace Court, provided by unrelated, undisputed patients owed to Plaintiff and non-covered or issued by Defendant. Defendant transferred this case to Federal Court and it became an ERISA case.
> 
> Plaintiff pursued the case *pro se* due to the high cost of legal representation and applied legal opinions already on file for similar actions in other U.S. District Court recognizing legal standing, rights of appeal, and proper stating a claim. Based upon those written opinions aforementioned, Plaintiff based the decision to support and pursue his claim now under ERISA challenges raised by Defendant.
> 
> [Dr. Weiner] prays the Court will award Defendant, BCBSLA no attorney fees. There are conflicting opinions concerning provider status and rights from other Circuit Courts.

*Id.* at 10.

In reply, BCBSLA contends that Dr. Weiner's

> Response also reflects the very sanctionable activity addressed in BCBSLA's Motion. Plaintiff argues that he is "not an attorney," yet admits that he brought this suit simply to establish legal precedent. Specifically, Plaintiff states that he "considered the settlement offer by BCBS," but rejected an offer of multiples of the amount which Plaintiff placed at issue, in order "to establish an opinion within this Circuit." Plaintiff hoped to establish precedent based on the reversed district court opinion in the *Pennsylvania Chiropractic Assn.* case, even after the Court

twice informed Plaintiff that this is invalid legal authority.

Dkt. No. 66 at 1-2 (footnotes omitted).

"BCBSLA prays the Court will enter an order awarding BCBSLA its attorneys' fees as a prevailing party under section 502(g)(1) of the Employee Retirement Income Security Act of 1974 ('ERISA'), 29 U.S.C. § 1001, *et seq.*, in the amount of $34,963.50 and $45.14 in costs." *Id.* at 2 (footnote omitted).

In an unauthorized sur-reply, Dr. Weiner explains that he "disagrees that Defendant should be awarded attorney fees, although Defendant ultimately prevailed on the merits of its position in this Court." Dkt. No. 67 at 2.

**Legal Standards**

As the United States Court of Appeals for the Fifth Circuit has recently explained, under 29 U.S.C. § 1132(g)(1),

> [a]n award of attorney fees under ERISA is "purely discretionary" and is reviewed "only for an abuse of discretion." ERISA § 502(g)(1) provides a court with discretion to "allow a reasonable attorney's fee and costs of action to either party." A claimant "must show 'some degree of success on the merits' before a court may award attorney's fees." Success means "the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue." In doing so, the court may, but is not required to, weigh five factors [set forth in *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)]:
>
> > (1) the degree of the opposing parties' culpability or bad faith;
> > (2) the ability of the opposing parties to satisfy an award of attorneys' fees;
> > (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
> > (4) whether the parties requesting attorneys' fees sought to benefit

> all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
> (5) the relative merits of the parties' positions.

*North Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 485 (5th Cir. 2018) (footnotes omitted).

"A district court must explain its decision to deny fees." *Id.* (internal quotation marks omitted).

But, if "it is determined that the [claimant] is entitled to attorneys' fees, it is incumbent upon the district court to 'utilize the lodestar method to determine the amount to be awarded.'" *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 348 (5th Cir. 2002) (quoting *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997)), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115-19 (2008).

Under the lodestar method, "the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, and then multiply the two figures together to arrive at the 'lodestar.'" *Wegner*, 129 F.3d at 822 (footnote omitted).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984)). The relevant legal community is the community in which the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id.* The hours remaining are those reasonably expended. *See id.* There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prods., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).

After calculating the lodestar, the Court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *See Wegner*, 129 F.3d at 822; *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989).

The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 448 F.2d at 717-19; *see also Saizan*, 448 F.3d at 800.

Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins*, 7 F.3d at 457.

Further, the lodestar amount may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar, *see Saizan*, 448 F.3d at 800, and the lodestar calculation may take into account several *Johnson* factors, *see Black v. SettlePou, P.C.*, 732 F.3d 492, 503 n.8 (5th Cir. 2013).

The Court recognizes that courts have noted that the analysis set forth above, and particularly the interplay of the lodestar analysis and the *Johnson* factors, may have been called into question. *See Perdue*, 559 U.S. at 552-53; *S&H Indus., Inc. v. Selander*, No. 3:11-cv-2988-M-BH, 2013 WL 6332993, at *2-*3 (N.D. Tex. Dec. 5, 2013).

But the United States Court of Appeals for the Fifth Circuit, without comment or reference to the United States Supreme Court's decision in *Perdue*, has continued to utilize the approach laid out by this Court. *See Black*, 732 F.3d at 502-03; *but see In re Pilgrim's Pride Corp.*, 690 F.3d 650, 663-64 (5th Cir. 2012) (analyzing whether any changes brought about by *Perdue* apply to bankruptcy attorneys' fees calculations); *but see also In re ASARCO, L.L.C.*, 751 F.3d 291, 296 (5th Cir. 2014) (following *Pilgrim's Pride*). And the Fifth Circuit, in a recent published opinion, has rejected the argument "that *Perdue* clearly disfavors applying the *Johnson* factors to determine a fee award and instead requires the use of only the lodestar." *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 393 (5th Cir. 2016). The Court of Appeals explained that

> [w]e agree that *Perdue* requires courts to first calculate the lodestar; indeed, this has long been our practice. *See, e.g., League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228,

1232 (5th Cir. 1997) ("The method by which the district court calculates an attorneys' fees award is well established. The district court first calculates the 'lodestar.' "). But *Perdue* does not, as Combs contends, make it impermissible to then consider any relevant *Johnson* factors. *Perdue* cautions against the sole use of the *Johnson* factors to calculate a reasonable attorney's fee but nowhere calls into question the use of relevant *Johnson* factors to make this determination. Indeed, *Perdue* expressly allows adjustments "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." 559 U.S. at 554, 130 S. Ct. 1662.
....
And though the lodestar is presumed reasonable, it may be adjusted where it "does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554, 130 S. Ct. 1662. .... *Perdue*, consistent with the Court's frequent pronouncements, explains that lodestar enhancements are to be rare. ....

In sum, the district court should begin by calculating the lodestar: the reasonable hours expended multiplied by a reasonable rate. The district court may then determine whether any other considerations counsel in favor of enhancing or decreasing the lodestar. In light of the "strong presumption" that the lodestar represents a sufficient fee, enhancements must necessarily be rare. *Perdue*, 559 U.S. at 553-54, 130 S. Ct. 1662.

*Id.* at 393-95.

*Perdue*, then, did not change the landscape of calculating attorneys' fees awards in the Fifth Circuit. Accordingly, the analysis below will take into account the necessary factors when determining the appropriate amount of attorneys' fees to be awarded under Section 1132(g)(1).

**Analysis**

I. <u>BCBSLA is entitled to an award of its reasonable attorneys' fees and costs.</u>

As Dr. Weiner concedes, and as BCBSLA explains, *see* Dkt. No. 63 at 4-5, 9, BCBSLA succeeded on the merits in this action, with a successful Motion for Summary

Judgment resulting in dismissal with prejudice of Dr. Weiner's claims, and therefore is eligible for an award of its reasonable attorneys' fees and costs under Section 1132(g)(1).

The Court then may – but is not required to – consider the *Bowen* factors in deciding whether to award attorneys' fees under Section 1132(g)(1). *See LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 846, 847 (5th Cir. 2013) (noting that "the Supreme Court has clarified that we do not need to consider the *Bowen* factors" and that, "[a]s the Supreme Court made clear in *Hardt*, ... the *Bowen* factors are discretionary"); *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254-55 (2010) ("Because these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section."); *see also Victory Med. Ctr. Houston, Ltd. P'ship v. CareFirst of Md., Inc.*, 707 F. App'x 808, 810 (5th Cir. 2018) ("Once a court determines that a party is eligible for a fee award, it may then examine the facts of the case to determine if a fee award is appropriate. .... A district court has 'broad discretion' under *Hardt* in awarding attorneys fees, limited only by the language of § 1132(g)(1).").

Here, where the parties address the factors, the Court will as well.

A.   <u>The degree of Dr. Weiner's culpability or bad faith</u>

The Court is persuaded by BCBSLA's analysis that this factor weighs in favor of awarding fees:

> "A party's conduct may rise to the level of bad faith for particularly

wrongful conduct, such as the pursuit of frivolous claims." "Yet a party may still be culpable for conduct while not actually reaching the level of bad faith." Even where a party's litigation position is not frivolous or advanced in bad faith, the first factor may still weigh in favor of awarding attorneys' fees when the litigation position is baseless. In fact, the first factor may weigh in favor of an award "notwithstanding any lack of bad faith" when the nonmovant's actions were primarily responsible for the losses underlying the litigation. And when a litigant pursues an indefensible interpretation of the ERISA plan at issue, reasonable attorneys' fees and costs are appropriate.

   BCBSLA sought an early resolution with Plaintiff in April 2017 and at a settlement conference with U.S. Magistrate Judge Stickney on June 2, 2017. At the settlement conference, Plaintiff was offered a settlement that was multiples of the amount of benefits Plaintiff placed at issue. Plaintiff refused, and all subsequent settlement demands were for ever-increasing amounts which had no relation to the underlying benefits sought. Furthermore, Plaintiff never would have paid BCBSLA's Counterclaim but for BCBSLA being a prevailing party.

   The Court's order denying Plaintiff's motion for summary judgment additionally demonstrates that Plaintiff's claims were baseless. Specifically, the Court noted that Plaintiff failed to verify and submit admissible evidence with his amended complaint. BCBSLA objected to Plaintiff's "facts in support" of his motion for summary judgment, and the Court sustained all of BCBSLA's objections. The Court also held that Plaintiff did not have a right to sue for plan
benefits under ERISA and found that Plaintiff's own cited authority did not support his claims because it was either inapplicable or invalid. Despite the Court's holding, Plaintiff continued to rely on this same inapplicable authority in his response to BCBSLA's motion to dismiss and motion for summary judgment.

   Indeed, Plaintiff re-urged virtually the same argument in his amended complaint, motion for summary judgment, and response to BCBSLA's motion to dismiss and motion for summary judgment. In each pleading, Plaintiff recited his version of the facts without proper evidentiary support and cited the same inapplicable and invalid legal authority. With each of Plaintiff's filings, judicial and party resources were consumed in order to respond to baseless, repetitive
claims.

Dkt. No. 63 at 5-6.

Dr. Weiner disagrees and contends that the legal issues he raised based on his

oft-cited authorities needed to be raised and should eventually be resolved by the United States Supreme Court. *See* Dkt. No. 65 at 5-9.

But, although Dr. Weiner is not an attorney, his continuous efforts to press his positions based primarily on a district court decision that was reversed before Dr. Weiner filed this suit support a finding that this factor favors an award of fees.

B.     Dr. Weiner's ability to satisfy an award of attorneys' fees

Dr. Weiner does not dispute his ability to satisfy a fee award.

Thus, the second factor weighs in favor of awarding fees and costs under Section 1132(g)(1).

C.     Whether an attorneys' fees award against Dr. Weiner would deter others

Dr. Weiner contends that "[t]he risk now understood of opposing attorney fees and low amount create a significant barrier to seeking money by a *pro se* provider Plaintiff." Dkt. No. 67 at 3. BCBSLA essentially agrees and urges that this factor therefore weighs in favor of awarding fees:

> The Court has an interest in deterring frivolous claims by a serial litigants. The Fifth Circuit has criticized the "dogged pursuit of the claim in the face of little or no legal or factual bases" as favoring an award of attorneys' fees. Indeed, the third prong has been applied in this Circuit to "promote the fundamental principle that it is important to read the governing contract carefully and thoroughly" before filing suit. Serial filings, such as those at issue here, dissipate judicial resources and disrespect ERISA's clear statutory guidelines for standing and recovery. Although the Court cannot enjoin Plaintiff from future unfounded claims, it can discourage the practice by awarding fees in this case.

Dkt. No. 63 at 8 (footnotes omitted).

The Court agrees that an award of fees here would deter other persons acting

under similar circumstances as Dr. Weiner has in this case.

        D.        Whether BCBSLA sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA

The Court finds that this factor weighs slightly in favor of a fee award, as BCBSLA contends that "the legal defense of the plan's unambiguous terms is consistent with BCBSLA's fiduciary duties" and "BCBSLA's defense of Plaintiff's groundless claims, and successful recovery of BCBSLA's Counterclaim, was for the benefit of the plan's participants and beneficiaries." Dkt. No. 63 at 8.

        E.        The relative merits of the parties' positions

The Court agrees with BCBSLA that, where "BCBSLA prevailed on all critical issues before the Court," "the merits of the Parties' positions favor the award of attorneys' fees to BCBSLA." *Id.* at 9.

Having considered all of the factors and Section 1132(g)(1)'s language, the Court determines in its discretion that it is appropriate to award BCBSLA its reasonable attorneys' fees and costs under Section 1132(g)(1).

II.        BCBSLA has established the amount of its reasonable attorneys' fees.

BCBSLA's Fees Motion is supported by the Declaration of Jonathan M. Herman, which incorporates his firm's records. *See* Dkt. No. 64.

Mr. Herman declares that he is "the founding and Managing Member of the Herman Law Firm," is "an attorney licensed to practice in Louisiana (admitted on October 7,1994) and Texas (admitted on March 17, 2006)," is "admitted to practice before all federal courts in Louisiana and Texas" and "was admitted to practice before

the U.S. District Court for the Northern District of Texas on October 22, 2007," and is "lead counsel for the Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana ('BCBSLA') in this matter." *Id.* at 1.

Mr. Herman explains:

> 7. As lead counsel, I am primarily responsible for devising and directing a defense strategy for this case; drafting BCBSLA's motion to dismiss, motion for summary judgment, responsive pleadings, and this motion for attorneys' fees; taking the lead in crafting BCBSLA's discovery strategy; conducting a substantive review of documents produced by Plaintiff; directing the research of the legal issues pertaining to BCBSLA's defense of this matter and the instant motion; conducting settlement negotiations with Plaintiff; and investigating the factual background and collecting documents to support BCBSLA's motions to dismiss and for summary judgment.
> 8. I have examined the records kept and maintained by my firm in the regular course of its business and such records reflect all time spent and the specific tasks performed in the rendering of legal services in this matter. The entries on said records were regularly made at or near the time of the transaction, act or event recorded thereby. All of the time reported by my firm was incurred for the benefit of BCBSLA. The attached billing statements are true and correct copies of the billing statements submitted to BCBSLA on the date reflected thereon, and maintained in the ordinary course of the firm's business.
> 9. My firm was retained in this matter by BCBSLA on March 30, 2017. During April 2017, I conducted an initial investigation and attempted an early settlement of the matter with the Plaintiff under Federal Rules of Civil Procedure 16 and 26.
> 10. By way of the instant motion, BCBSLA is seeking only attorneys' fees and costs incurred in defense of this matter beginning on May 1, 2017, after my firm's initial investigation and attempts at early settlement pursuant to Federal Rules of Civil Procedure 16 and 26.
> 11. As a lawyer with 24 years of experience handling civil litigation, I have handled numerous matters similar to this lawsuit. I have represented BCBSLA since 2004. For purposes of this case, I have billed BCBSLA the rate of $385.00 per hour, a significant discount to the rate I normally charge other clients and the published rate for my services as an Arbitrator for the American Arbitration Association. The associates who worked on this matter billed at the rate of $275.00 per hour, also discounted from the rate they charge other Herman Law Firm clients.

*Id.* at 2-3.

Mr. Herman reports that the total number of hours expended on this matter by his firm from May 1, 2017 to September 28, 2018 is 114.90 hours, billed at a total amount of $34,826.00, broken down as 30.60 hours at $385.00 per hour by Jonathan M. Herman, Managing Member, for a total of $11,781.00; 80.20 hours at $275.00 per hour by Charles W. Hill, Associate, for a total of $22,055.00; and 3.60 hours at $275.00 per hour by Mitchell M. Hasenkampf, Associate, for a total of $990.00 (not $1,127.50). *See id.* at 3.

And Mr. Herman declares that, "[t]hrough [his] experience as an attorney in litigation matters such as this one, [he is] familiar with the reasonable and necessary work required by attorneys at various experience levels to succeed in defending cases such as this," is "familiar with the customary and reasonable attorneys' fees charged in this market for cases of this type," and is "familiar with the work that has been done on this matter" and that, "[b]ased on [his] personal knowledge of the work done in this case, [he has] an opinion as to what reasonable attorneys' fees would be in this matter," which is that "reasonable attorneys' fees to serve as lead counsel for BCBSLA in this lawsuit from May 1, 2017 to September 28, 2018, total $34,963.50." *Id.* at 3-4. According to Mr. Herman, "[t]his amount is more than reasonable under the" *Johnson* factors." *Id.* at 4.

The billing records that Mr. Herman submitted reflect the work that BCBSLA's attorneys performed and include a narrative description – with redactions apparently to protect attorney work product or attorney-client privilege – of the work done and the

number of hours that it took to complete the work. "Redaction of billing records is acceptable so long as the court has sufficient information to determine that the hours related to those entries were reasonably expended." *Brown v. ASEÀ Brown Boveria, Inc.*, No. 3:14-cv-37-CWR-LRA, 2018 WL 283844, at *3 (S.D. Miss. Jan. 3, 2018); *accord Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009) ("Redaction of billing records is acceptable as long as the court has sufficient information to form an opinion on the reasonableness of the fees.").

The Court has carefully reviewed these records and finds that the redactions did not always permit the Court to make that determination. More specifically, the entries for Mr. Herman on May 15, 18, 19, 22, 26, and 31, 2017, June 5 and 9, 2017, October 4 and 5, 2017, March 29, 2018, July 27, 2018, August 17 and 21, 2018, and September 24 and 27, 2018 do not identify the subject of the attorneys' communications or other tasks and therefore fail to provide sufficient information to assess whether the time expended was reasonable in representing BCBSLA in this action. *Accord Monarch Invs., LLC v. Aurrecoechea*, Cause No. A-14-CA-01019-SS, 2017 WL 1034647, at *4 (W.D. Tex. Mar. 16, 2017).

"Redacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended." *Randolph*, 634 F. Supp. 2d at 800.

Under the circumstances, the Court determines that a reduction of 8.70 hours at $385 per hour, totaling $3,349,50, is appropriate.

The Court otherwise finds that the remaining 106.20 total hours for which

number of hours that it took to complete the work. "Redaction of billing records is acceptable so long as the court has sufficient information to determine that the hours related to those entries were reasonably expended." *Brown v. ASEÀ Brown Boveria, Inc.*, No. 3:14-cv-37-CWR-LRA, 2018 WL 283844, at *3 (S.D. Miss. Jan. 3, 2018); *accord Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009) ("Redaction of billing records is acceptable as long as the court has sufficient information to form an opinion on the reasonableness of the fees.").

The Court has carefully reviewed these records and finds that the redactions did not always permit the Court to make that determination. More specifically, the entries for Mr. Herman on May 15, 18, 19, 22, 26, and 31, 2017, June 5 and 9, 2017, October 4 and 5, 2017, March 29, 2018, July 27, 2018, August 17 and 21, 2018, and September 24 and 27, 2018 do not identify the subject of the attorneys' communications or other tasks and therefore fail to provide sufficient information to assess whether the time expended was reasonable in representing BCBSLA in this action. *Accord Monarch Invs., LLC v. Aurrecoechea*, Cause No. A-14-CA-01019-SS, 2017 WL 1034647, at *4 (W.D. Tex. Mar. 16, 2017).

"Redacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended." *Randolph*, 634 F. Supp. 2d at 800.

Under the circumstances, the Court determines that a reduction of 8.70 hours at $385 per hour, totaling $3,349,50, is appropriate.

The Court otherwise finds that the remaining 106.20 total hours for which

number of hours that it took to complete the work. "Redaction of billing records is acceptable so long as the court has sufficient information to determine that the hours related to those entries were reasonably expended." *Brown v. ASEÀ Brown Boveria, Inc.*, No. 3:14-cv-37-CWR-LRA, 2018 WL 283844, at *3 (S.D. Miss. Jan. 3, 2018); *accord Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009) ("Redaction of billing records is acceptable as long as the court has sufficient information to form an opinion on the reasonableness of the fees.").

The Court has carefully reviewed these records and finds that the redactions did not always permit the Court to make that determination. More specifically, the entries for Mr. Herman on May 15, 18, 19, 22, 26, and 31, 2017, June 5 and 9, 2017, October 4 and 5, 2017, March 29, 2018, July 27, 2018, August 17 and 21, 2018, and September 24 and 27, 2018 do not identify the subject of the attorneys' communications or other tasks and therefore fail to provide sufficient information to assess whether the time expended was reasonable in representing BCBSLA in this action. *Accord Monarch Invs., LLC v. Aurrecoechea*, Cause No. A-14-CA-01019-SS, 2017 WL 1034647, at *4 (W.D. Tex. Mar. 16, 2017).

"Redacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended." *Randolph*, 634 F. Supp. 2d at 800.

Under the circumstances, the Court determines that a reduction of 8.70 hours at $385 per hour, totaling $3,349,50, is appropriate.

The Court otherwise finds that the remaining 106.20 total hours for which

BCBSLA seeks to recover its fees were reasonable and necessary to successfully representing BCBSLA in this case and are not excessive, duplicative, or inadequately documented and therefore were reasonably expended for the tasks for which BCBSLA should be awarded its attorneys' fees under Section 1132(g)(1).

The Court finds that the claimed rates of $385.00 and $275.00 per hour are reasonable and within the market rate for attorneys handling this type of litigation in the Dallas area of these attorneys' experience level.

The Court therefore finds the appropriate lodestar here to be calculated as 21.90 hours at $385.00 per hour by Jonathan M. Herman, plus 80.20 hours at $275.00 per hour by Charles W. Hill, plus 3.60 hours at $275.00 per hour by Mitchell M. Hasenkampf, for a total of $31,476.50.

The Court has considered the *Johnson* factors but notes that the lodestar is presumed to be reasonable and should only be modified in exceptional cases.

Here, BCBSLA does not seek an enhancement of its attorneys' fees, and the Court finds that there are no other exceptional circumstances.

But the Court does not find that the $45.14 in expenses has been adequately explained or supported, and the Court will not award those costs.

**Conclusion**

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part BCBSLA's Motion for Attorneys' Fees [Dkt. No. 63].

The Court ORDERS that Plaintiff Richard H. Weiner, DPM, PA must pay Defendant Blue Cross and Blue Shield of Louisiana its reasonable attorneys' fees under

29 U.S.C. § 1132(g)(1) in the amount of $31,476.50.

SO ORDERED.

DATED: October 24, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE